CY TECH v. GROUPON May it please the courts, I am Alex Deva representing CY TECH, the appellant in this case. The district court's ruling on summary judgment that the CY patent was not entitled to the of the 2001 CY application is error for three reasons. First, the district court failed to apply the proper standard. It failed to apply the viewpoint of one of ordinary skill in the art to the understanding of the 2001 CY application. Second, on summary judgment the district court weighed the evidence, which is improper. Third, the district court failed to apply controlling federal circuit precedent from Billstad that a species disclosure is sufficient written description for a genus claim. First, regarding the failure to apply the proper standard, the district court did not apply the knowledge of one of ordinary skill in the art to its analysis of the disclosure of the 2001 CY application. It seems to me that your argument there, so maybe I'm misunderstanding you, is just another way of saying that using the method for products would have been obvious. And that kind of inquiry and analysis is precluded by our case law, is it not? It is correct that an obvious disclosure is not sufficient for a written description. That is not what I'm arguing though. Well, one skill in the art you're saying would have read your references to works of art and understood that that also meant that products were included? Is that what you're saying? So, one of ordinary skill in the art would have read the disclosure of the 2001 application completely, and would have seen that the references to works of art were the preferred embodiment. But in addition, there's broader language regarding selling products, selling software, as a specific example, regarding selling projects. This language is broader than works of art. In addition, one of ordinary skill in the art... Well, there's the one reference to products, but it is immediately followed by a qualifier, is it not? It doesn't say products such as works of art, it says products specifically works of art. In other words, to the extent that that could be read to be broader, it would seem to cover a variety of works of art, but not products generally. So, Your Honor, I believe you're referring to the field of invention statement, where the first sentence describes this is an invention relating to selling products, very generally. The second sentence says this is related to selling works of art, for example, over the internet. So, there is no disclaimer of the broader scope of selling products generally. So, you're suggesting that's what suggests that this is just one possible embodiment, those two sentences combined in the background of the invention? That is one aspect, Your Honor. There's much more. I mean, in that sentence, Judge O'Malley pointed out, it says in particular the present invention relates to popular artists, etc. So, are you suggesting that that's only one example of the broader sentence? I'm not understanding your argument. So, the initial sentence that says this invention relates to selling products generally, is one instance, is an instance in the specification that one of ordinary skill in the art would look at and say this is an invention that relates to selling products generally. There's no disclaimer of that broad scope. It then says we can use this, the invention also relates to selling works of art. Now, beyond that, one of ordinary skill in the art, and the only evidence in the record of what that is, is a person with a computer science background. A person with a computer science background would, again, look at the entire 2001 application, including, and probably first and foremost, the figures. So, the figures at JA 2173-2181, eight pages of figures, lay out the system in general, and more specifically, lay out the details of the databases that are interfaced with the system, and then there's multiple figures showing the algorithms involved in the claim to system. I'm still coming, if I can bring you back to Judge Prost's earlier question of exactly how we are to look at this question, as opposed to how we would look at it if it were a question of obviousness. I mean, suppose that what and then someone came along and put a hybrid engine on a Toyota, and the inventor of the lawn tractor hybrid engine decided, well, that's just what I had in mind, and writes a much broader claim to hybrid engines in vehicles. Do you think that the fact that a person of ordinary skill would have recognized that the lawn tractor probably could be extrapolated to other types of vehicles would be enough to make that disclosure sufficient to support the vehicle's claim? That's an interesting hypothetical, and I think what it turns on is what the level of ordinary skill in the art is, at least at one level. So, if one of ordinary skill in the art, hearing or seeing the disclosure of a hybrid engine with a vehicle, and in particular, the embodiment of a lawn tractor, if that were sufficient for the person to say, oh, well, that includes any vehicle, including a Toyota, that would be sufficient disclosure. Now, in this case, we actually have a distinction from your hypothetical. In this case, the disclosed system would work without modification to sell either works of art, projects, software, products, whatever, any type of product. What's key about the invention here is that it's a network-connected, server-based system for selling with a fixed price and minimum quantity in a group buying setting. It's that particular system and method that's claimed here. Well, what about what the claims say? I mean, the claims all specifically reference a work of art. Right. You're talking about the claims in the initial application? Yeah. Right. The claims in the initial application aren't limiting on what the disclosure is. Well, I mean, I don't know what it means to be limiting. You're claiming what you're claiming. You're not claiming the universe, and this is just an example. You're claiming a method for producing a work of art over a network. Are you suggesting that's not limiting, and so you're claiming a method for anything and everything? I don't understand how you're using the explanation of they're not limiting. Your Honor, the initial claims in a patent application are often just the first effort to determine the bounds of the invention, and through the prosecution process, the inventor learns exactly what the scope of the prior art is and what he's able to claim. Sure. And if your specification, minus the original claims, had been all about products in general, and then you had claimed only works of art, you would certainly be able to come back later in the course of the prosecution and then extend your claims to other types of products. The problem is, have you, by the combination of your specification plus the narrowness of the claims, have you committed yourself to only disclosing, describing your invention in a way that excludes this entire universe of other products, and that's what we're struggling with. Certainly, and I would suggest to you and your Honors that the disclosure of the CY application, the 2001 CY application, it must be understood as one of ordinary skill in the art. The level of ordinary skill in the art, it's unroboted, is a person with a B.S. in computer science and some experience in programming. That person and the early evidence of how that person would look at the CY 2001 application is a declaration of Dr. Storer, who himself is the only person of at least ordinary skill in the art that has provided evidence as to how one of ordinary skill in the art would look at the initial application. All that evidence shows is one of ordinary skill in the art would look at the function of the system that was disclosed, and the function of the system is that it's a server-based, network-connected, fixed-price, minimum quantity method of selling products, selling anything in a group buying setting. Do I understand it correctly that originally the concept that was being pitched was putting buyers together with producers of works of art, and it was actually the examiner who said you need some computer connection to this concept in order to make it patentable. There is that aspect of the file history. Well, there's two issues I think that you raised, Judge O'Malley. First, there's the issue that the concept of the computer was a complete disclosure of a system of the server, of the network connection, of the database interface, all of that technology, so there was plenty of basis for that, and I believe in prosecution all that the examiner was bringing out was the possibility of a Section 101 issue, so that was addressed by adding references to the server, et cetera. But I think the other issue that your question raises is how would one of ordinary skill in the art look at that disclosure? And again, I go back to a person with a computer science background would focus on the function that's disclosed. So the case in Reece Smith from this court's predecessor provided an illuminating pedagogical example, and this is the example of the invention of the scales of justice. And the issue is that the only thing that was disclosed in this example is the use of a lead counterweight, only lead as a counterweight. However, your predecessor court had no problem in saying that the patentee would be entitled to claim covering the counterweight of any composition, and that's because the predecessor court reasoned one of ordinary skill in the art in the scale art would understand that the counterweight was important for its function, not for its composition, and that's exactly the situation we have here. We have a system and a method that relates to a computerized system, relates to using a fixed price and a minimum quantity in a group buying setting. That's what's key here, not what's being sold by us. That system can equally sell works of art, projects, software, products, whatever, without modification. You're into your rebuttal time, would you like to save it? I'd like to reserve the rest of my time. Very good. Good morning, may it please the court. David Abel of DLA Piper, on behalf of defendant and cross-appellant Groupon. The issues here are the summary judgment, which Mr. Gieser was just talking about, as well as the denial of the Section 285 claim for fees. The case, as you've gone through on the questions so far, I think there's a number of points that I agree with you on your questions. Mr. Gieser indicates that there was only a certain amount of evidence directed to what a person of ordinary skill in the art would understand the original application to mean, and that that evidence was just what Dr. Storer said. I disagree with that, in part because of the reasons you pointed out. There were claims in the original application, where the inventor, who was not only the inventor, he was the patent attorney who prosecuted the case, and he was the attorney who... Yeah, but the claims don't matter, as Judge Bryson pointed out. I mean, the claim, it's the specification we look at to find out if there's a sufficient written description. Obviously, we're only here because he tried to amend those claims. Well, the case comes out of this, to this court, as a result of a continuation in part application, which was the patent in which the claims were actually issued. The parent application had a certain specification. That specification was directed to works of art. It claimed works of art, and the inventors put in a declaration saying they understood, including the inventor who wrote it as the patent attorney, understood what his invention was, was directed to works of art. In the file history, they claim, they specifically argued that it was specifically directed to works of art. So, if you look at the original specification, and part of what we put into the file was a comparison between the original specification as published and the second specification as published, and that's at 193 through 207. And I'm not sure if your versions are in color. Sure, and that happens. We're talking about a universe of cases here. We've had a fair number of them, actually. And this is not an atypical pattern. It's the species-genus issue, where you go from having initially disclosed and claimed a species, and then you, even by adding new material, I won't say new matter, that's a term of art, but adding new material to the specification, you add generic claims. And the question is, have you extended beyond the essence of what you disclosed in the original application? And sometimes we've said yes, and sometimes we've said no. So, simply saying, well, there's been some material that's been added to the specification doesn't give us the answer. The question is, why is this case different, for example, from the Smythe case, or Smith, if it's pronounced that way? Well, this case is actually specific to the fact that they went through, and the key aspect here is the definition of the word product. And product only appeared a couple times in the original application. Primarily, in the original application specification, it was the word project, and project was directed to works of art projects. And the project, throughout the specification of the original application, when the CIP was filed, they changed the word project to product, to broaden it up. They specifically added, at page 205, the text which says, slight modifications can be made to the above detailed description relating to works of art to make a generic community collective purchase model that can be applied to a wide variety of consumer transactions. So, in the first sentence of the main portion of the addition, they're acknowledging that the original specification was directed to works of art, and what they want to do with the CIP is add in, make it generic, make it apply to various other types of products. In that same paragraph, in the same sentence, in the same paragraph, they introduce what the term product used anywhere in the drawings or the written description also encompasses services or any other project that can be performed using the described methodology. The term was specifically broadened. The use of product was specifically used so as to cover any type of service, including travel services. Under Lockwood, the issue is whether the parent application disclosed the full scope of the claims. And the parent application clearly did not disclose the full scope of the claims when the claims, as construed by the court in the Markman order, cover travel services, because product covers services, because the court adopted the exact definition provided in the CIP, or I'll call it new matter text. They adopted that specific definition because that's what the plaintiff asked for. Even after, months after, six months after, the answering counterclaims filed in the very first case explained that if they took that position, then the original claims, then the claims of the patent would be invalid because of the prior publication. The prior publication occurred three years before the filing, prior publication of the first application occurred three years before the filing of the second application, becoming a prior art if it's disclosure of the support for the claims and the full scope of the claims under Lockwood, you have to disclose the full scope of the claims in the parent application to be able to claim priority if it didn't go back in time. And it doesn't because the original specification very clearly was directed to projects including works of art. And that's what it was directed to and that's what they claimed, that's what they understood, and that's when they changed in the CIP text. Do you concede now, though you didn't in your red brief, but do you concede now that Dr. Storer's testimony is part of the record, that the judge didn't exclude it, she simply found it to be not persuasive? I think that the judge's determination was an evidentiary determination which has to be reviewed for abuse of discretion to be considered because she has the gatekeeper duty. How was it an evidentiary determination? She did not exclude his testimony, though you specifically asked her to. What she said is, I don't need to do that because I've looked at it and I find it not persuasive. That's very different from an evidentiary ruling excluding testimony, isn't it? Under Rule 702, an expert can be put in if it's going to help the trier of fact. The judge has a responsibility and it's given a duty of discretion and responsibility to determine whether or not a proposed expert is going to help under Rule 702. She made a determination that he doesn't help. And so that is a determination under her powers according to Daubert and Kumho-Tyre that his evidence is not relevant under the 702 standard. It doesn't come in under the 702 standard. You're reading an awful lot into the phrase that she didn't find it to be persuasive. She never cited 702. She did not do any of the discussion that you just said. All she said is, I don't need to go there because I don't find it persuasive. So don't we have to assume that it's in the record and the question is whether or not it's persuasive? I think you have to determine whether or not her decision that he was not persuasive was a decision that falls under the Daubert and Kumho-Tyre decision with respect to experts. Because the issue then becomes, if you consider it as part of the record, then you would actually have to consider the evidentiary objections if you were going to have to take that into account. And that's why we put in the evidentiary objections. Because I don't think you do when you didn't appeal it. I think the determination was, you could put in anything you want. You can say anything you want from an expert standpoint. The court doesn't have to listen to it. It's similar to the Marktech decision where they put in what was categorized as junk science declaration about what the technology was. The court doesn't have to accept it. The court can say, no, I don't have to accept that. It's not persuasive and therefore it's rejected. And saying it's rejected, the court excluded it as being something she had to consider under Rule 702. It's a little bit circular, but all right. Okay. So let me, because of the time, let me turn to the exceptional case determination. An exceptional case determination was denied under application of Purer, which was a Ninth Circuit decision. And I won't even bother trying to say the second name of it because I'd kill the pronunciation. And in that case, it determined that it was an extraordinary standard. And that's not this court's handle, standard for an exceptional case. An extraordinary case under the Ninth Circuit's determination was basically an exceptional standard. And that's not even what the Ninth Circuit applies now, but it was essentially incredibly egregious or something to that effect. It has to be something more. And it's a very old case, predating even the Federal Circuit. But in terms of the English language, I'm really hard-pressed to see that the two terms mean anything significantly different. Exceptional versus extraordinary. It seems to me to be a matter of... A matter of degrees, maybe. Well, I mean... I put extraordinary above exceptional. Which is, for example, which is worse? Which is... I'd say... If I were to say that one of my law clerks is exceptional and the other is extraordinary... I'd hire the extraordinary one. Which have I either praised or criticized more? I'd hire the extraordinary one. Because I think that's, you know, more descriptive and higher level. All right. What happened in the first case, though, that wasn't useful for the second case? The first case, what we were seeking fees for in the first case was only what happened after they went and started filing the corporation documents. I didn't go back and ask for the fees associated with the original filing of the complaint, of the answering counterclaims. What would basically happen is once they knew, once they hired a new counsel, once they turned around and filed an incorporation document, at that point they knew what the problem was. Right. But what were you doing in that first case that didn't translate into the second case by way of discovery or by way of motion practice? I mean, what was there? Was there a motion to dismiss for lack of standing? One of it was the ex parte, which was the motion to dismiss the first case for lack of standing. And then also we conducted the Rule 26 conference and we conducted the... For the first case, we conducted discovery issues and we also went through to negotiate a protective order, which never got entered into the second case. In part because the problem with the first case and the negotiation of the protective order in the first case was an attempt to negotiate a protective order with an entity which didn't exist from their standpoint. And they knew it at the time. But was there anything different in the protective order for the second case? There was never a protective order in the second case. You had no protective order in the second case? No. So it didn't get entered in the second case. Because there was basically a discovery state that once the court... of the file history. And they looked at the file history and our very, very detailed counterclaims, which are in the record, which we filed both in the first case and the second case. The court looked at all of that and said, look, we got a CIP problem here. And whether or not there was a support for the original application. Let's get to that first. Because that was expected to be determinative. Case determinative for the court. And it was case determinative for the court. There's an interesting case from this court last week in CLS Bank vs. Alice Corporation where it specifically says it's the court's duty to figure out how to manage its case. And what to go first. How to decide what to go first. It was a section 101 case and it said, well, under Billstat you can check 101 first, but you don't have to. It's the court's discretion on how to do it. That comes back and hurts us here. Because we were very efficient in getting rid of this case. And getting the summary judgment, which we had proved by clear and convincing evidence. And getting it disposed of without ever having to get into many of the other elements that would give you an equitable conduct fraud or something like that, which would be the basis of a 285 claim. Essentially, we're being penalized on the 285 claim because we got rid of it efficiently. And because of the time, I'll reserve the rest, unless there's a question you want. You're reserving for the rebuttal on the cross appeal? Exactly. Okay, well, keep in mind that you will only be able to address the cross appeal on your rebuttal. Yes, I understand. Thank you. Mr. Gieson. Thank you, Your Honor. If I may, I'd like to first address my counsel's argument regarding one of ordinary skill in the art. He makes two points regarding the standard that you just applied. First, he talks about the claims in the original application. The standard for analyzing whether there's a written description in the 2001 application is an objective standard. It's what one of ordinary skill in the art would have understood from looking at that disclosure, not the subjective understanding necessarily of the inventor. Second, he makes the same mistake that the district court is making. He's substituting his own understanding for the 2001 application for that of one of ordinary skill in the art. Well, he's actually substituting your client's understanding. In other words, he wasn't saying this is the way I read it. He was pointing to places in your CIP that showed how your client read it. I don't think he was doing that, actually. I mean, he was pointing to stuff in the file history, but my client, the inventors, are not necessarily people of ordinary skill in the art, as established by the Federal Circuit case law. But what they're saying in the prosecution history is not a disclaimer. Well, they're at least of ordinary skill in the art, correct? I mean, they could be extraordinary, but they're at least of ordinary skill. They could be, but actually inventors don't necessarily have to be people of ordinary skill in the art at all. But your inventors, in fact, satisfy your standards, do they not? It's not in the record, but I do not believe my inventors have a computer science background. So, the issue, though, is looking at the 2001 application. How does one of ordinary skill in the art understand it? I believe my colleague, opposing counsel, is substituting his understanding for that. Third, he seems to require an express disclosure in the 2001 application of selling products. Well, first off, there is an express disclosure of selling products, and secondly, that's not the point. That's the sentence that you refer to in the field of invention? It's that sentence. There's also use of the term project, which is broader than works of art. There's use of the term product in the figures. The figures themselves, if you look at them as a whole, talk about projects and products, and there's no limitation to works of art. Well, I'm not sure. We don't have time to get into that. Figure 9, in particular, the product there clearly refers to the completed art project. That's what the disclosure references with respect to Figure 9. But it uses the word product. But the disclosure, though, the specification referring to that, refers to the work of art, not products generically, but works of art, right? In that portion of the specification, you're correct, Your Honor. That's talking about the particular preferred embodiment regarding works of art. On the priority issue, there are three errors in the district court's judgment. First, the district court failed to apply the knowledge of one of Ordinary's Gilding Art just as the facts in Billstad, where the court... I don't have time to go into the details of Billstad. Just if you could just summarize the three errors. You had started with one just very quickly. Certainly. So, the first error is that the district court failed to apply the understanding of one of Ordinary's Gilding Art to the 2001 application. Second, the district court weighed the evidence and made factual findings, which is inappropriate on summary judgment. And lastly, the district court failed to apply controlling federal circuit precedent to Billstad case in its B.C. Very well. Thank you. And I didn't hear anything on the cross appeal. So, I think there's nothing to rebut. Okay. Thank you. Thank you. The case is submitted. We thank both counsels.